**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gita Mishkin,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Pharmaceutical Research Associates Incorporated,<br><br>　　　　　Defendant. | No. CV-24-01423-PHX-KML<br><br>**ORDER** |

This case concerns a soured employment relationship. Plaintiff Gita Mishkin formerly worked for Defendant Pharmaceutical Research Associates, Inc. ("PRA") where her compensation included incentive-based commissions for meeting sales goals. After PRA repeatedly changed her goals, Mishkin resigned and filed this complaint seeking commissions she believes she is owed. Her complaint is dismissed in part.

**I.   Background**

In approximately 2010, Mishkin began working as a Business Development Director with PRA. Part of her compensation in that role included incentive-based commissions for meeting sales targets. (Doc. 11 at 3.) In May 2023, PRA provided Mishkin a compensation plan that set new sales targets. (Doc. 11 at 3.) This plan purported to take effect retroactively to January 1, 2023, impacting commissions Mishkin had already earned. (Doc. 13-1 at 4.) According to Mishkin, the changes were made in order to "take clients and revenue away" from her because she was already "on track to earn a large commission for her work." (Doc. 11 at 3.) Neither party has explained how commissions

were calculated before May 2023.

The May 2023 plan stated it would "remain in effect until modified or canceled at the sole discretion of [PRA]." (Doc. 13-1 at 4.) The plan provided that commissions were "earned only when the sale is confirmed by sales management as being complete," and would be paid out between 75 and 90 days after the close of the quarter in which they were earned. (Doc. 13-1 at 4.) Commissions would be paid only if the participant was "employed by [PRA] at the time of payment." (Doc. 13-1 at 5.) The plan claimed it was "not a contract of any kind" and PRA "reserve[d] the right in its absolute discretion to change at any time the . . . commission rates, bonus standards or any other performance standards applicable to the participant." (Doc. 13-1 at 5.)

The plan provided commissions that "accrued under a prior year plan" but for which payment had been "deferred to a future date" would be "calculated per the payment terms of the previous plan." (Doc. 13-1 at 5.) If Mishkin met 90 percent of her sales goal for Q3, she could expect to be paid commissions deferred from previous quarters. (Doc. 11 at 4.) The text of the plan does not explain how commissions would be "deferred." The complaint also does not explain whether there is a difference between "deferred compensation" and "deferred commissions" or if Mishkin is using the terms interchangeably.

Mishkin alleges she was "exceeding her goal and on track to earn a large commission for her work" under the terms of this plan. (Doc. 11 at 3.) But in late August 2023, PRA provided Mishkin with another commission plan that would require her to meet "even higher revenue target[s]" in Q3 or Q4 to receive "any of her deferred compensation." (Doc. 11 at 3.) If she did not achieve the revenue targets, Mishkin's deferred commissions would be forfeited. (Doc. 11 at 3.) Mishkin alleges her sales goals were modified "to take clients and revenue away from [her]" when she "was exceeding her goal and on track to earn a large commission for her work." (Doc. 11 at 3.)

By September 1, 2023, PRA sent Mishkin a spreadsheet showing she had reached 98 percent of her quarterly goal with one month remaining and was "on track to exceeding her Q4 revenue goal." (Doc. 11 at 3–4.) But five days later, PRA gave Mishkin the "New

2023 Alignment." The alignment attributed many of her sales, which previously counted towards her revenue targets, to other sales associates, primarily men. (Doc. 11 at 4.) Because PRA did not also adjust Mishkin's sales targets, Mishkin "suddenly was well below the 90% threshold necessary to retain her deferred commissions from prior quarters." (Doc. 11 at 4.) Mishkin argues the changes were intended to "deprive [her] of her already-earned commissions." (Doc. 11 at 4.)

In response to the new alignment, Mishkin requested that PRA provide her "the amount earned," but PRA "ignored or avoided explaining the sudden changes." (Doc. 11 at 4.) Mishkin alleges the commissions she seeks were paid to male employees. (Doc. 11 at 4.) After PRA refused to pay Mishkin the commissions she requested, she submitted a notice of resignation on September 11, 2023, effective September 22, 2023. (Doc. 11 at 5.)

Mishkin filed her original complaint in state court but amended after the case was removed. (Doc. 11.) The amended complaint alleges six claims: violations of the Equal Pay Act (EPA); bad faith failure to pay wages under the Arizona Fair Wages Act (AFWA); breach of contract; wrongful termination under the Arizona Employment Protection Act (AEPA); breach of the implied duty of good faith and fair dealing; and unjust enrichment. After PRA moved to dismiss all claims, Mishkin sought leave to file an amended complaint that alleged additional facts in support of her EPA claim, eliminated her breach-of-contract claim, and clarified her requested relief. (Doc. 30-1.)

Mishkin's proposed amended EPA count does not state a claim for relief, so her request to amend that claim (Doc. 30) is denied. Mishkin has abandoned her breach-of-contract claim so it is dismissed without leave to amend. That leaves four claims as to which Mishkin opposes PRA's motion to dismiss: AFWA, wrongful termination under AEPA, breach of the implied duty of good faith and fair dealing, and unjust enrichment. PRA's motion to dismiss those claims is granted in part and denied in part. (Doc. 13.)

**II.      Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted)). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Id*. at 663–64.

### III. Equal Pay Act

Mishkin claims PRA violated the EPA by crediting sales she completed to male employees and paying them her commissions as a result. (Doc. 11 at 5.) The EPA requires a plaintiff show "employees of the opposite sex were plausibly paid different wages for equal work." *Thurston v. W. All. Bank*, No. CV-23-01097-PHX-DLR, 2024 WL 961433, at *3 (D. Ariz. Mar. 6, 2024). This requires a plaintiff to allege the jobs required "equal skill, effort, and responsibility, and [were] performed under similar working conditions." 29 U.S.C. § 206(d)(1). A plaintiff need only show the jobs were "substantially equal," not necessarily "identical." *Freyd v. Univ. of Oregon*, 990 F.3d 1211, 1220 (9th Cir. 2021).

PRA moved to dismiss the EPA claim based on Mishkin's failure to identify comparable male employees. (Doc. 13 at 4.) Mishkin then moved to amend her complaint to allege facts regarding four male employees who had the same skills, responsibilities, education, and prior experience. (Doc. 30-1 at 6.) In opposing that motion, PRA argued amendment would be futile because none of the four males was an appropriate comparator. According to PRA, the males had received their commissions because they were still employed on the day the commissions were paid but Mishkin was not. (Doc. 32 at 4.) Mishkin argues the males' employment status is irrelevant but does not explain why. (Doc. 33 at 2–3.)

Mishkin does not allege the male employees resigned before the payment date and still received commissions. She focuses on language in the May incentive plan stating that

commissions accrued under a prior plan "will be calculated per the payment terms of the previous plan," but nowhere addresses whether she or the males were still employed at the 75-days-after-close-of-quarter at which the incentive plan forecasted commissions being paid. (Doc. 13-1 at 4.) She argues the male comparators "had the exact same job" (Doc. 33 at 2), but holding "the exact same job" while employed is not relevant to the crucial issue of employment on the date the commissions were paid. In other words, Mishkin does not allege facts showing the males performed under similar conditions because she did not work until the payment date and could not have been paid. *Hodge v. Tucson Med. Ctr.*, No. CV 04-723-TUC-FRZ, 2006 WL 8441214, at *7 (D. Ariz. Aug. 10, 2006). Despite attempting to plead this claim three times, Mishkin has not provided facts addressing it. Her proposed amendment is therefore futile and her motion to amend is denied. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) ("[A] district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile."). PRA's motion to dismiss Mishkin's EPA claim is granted without leave to amend.

### IV. Arizona Fair Wages Act

Mishkin claims PRA's failure to pay her the commissions she demanded violated AFWA. (Doc. 11 at 6.) AFWA requires an employer to pay "all wages due the employees up to that date" on "each of the regular paydays." A.R.S. § 23-351(C). AFWA defines wages as "nondiscretionary compensation due an employee in return for labor or services" which an employee has a "reasonable expectation to be paid." A.R.S. § 23-350(7).

PRA argues Mishkin's commissions are not wages because the statute does not cover discretionary income or deferred commissions and Mishkin resigned before any payment was due. (Doc. 13 at 10–12.) "Bonuses are non-discretionary only when an express or implied contract establishes that an employer is required to pay them." *Heimer v. Price, Kong & Co.*, No. 1 CA-CV 07-0643, 2008 WL 5413368, at *4 (Ariz. Ct. App. Dec. 30, 2008); *see also Schade v. Diethrich*, 760 P.2d 1050, 1061–62 (Ariz. 1988) ("While the amount was subject to computation, the obligation to pay was absolute, not

discretionary.") Bonuses that are subject to "arbitrary" and "subjective" factors, on the other hand, are "discretionary" under AFWA. *Corbin v. GoDaddy.com, Inc.*, No. CV-10-1313-PHX-GMS, 2011 WL 814752, at *3 (D. Ariz. Mar. 2, 2011). PRA argues it retained "absolute discretion" to change the terms of the performance standards but did not have discretion to withhold commissions if the standards were met. (Doc. 13 at 11.) Neither party addresses how this partial discretion fits within Arizona law.

As to whether AFWA encompasses deferred compensation, PWA's motion also misses the mark but again Mishkin provides no meaningful response. PRA cites *Nevins v. Upward Foundation* to argue deferred compensation does not fall under the definition of "wages" under AFWA. (Doc. 13 at 12. (citing *Nevins v. Upward Found.*, No. CV-11-00563-PHX-NVW, 2011 WL 2600587, at *3 (D. Ariz. June 30, 2011).) But multiple Arizona courts have found AFWA covers deferred compensation. *See Thompson v. StreetSmarts, Inc.*, No. CV-10-1885-PHX-LOA, 2011 WL 2600744, at *18 (D. Ariz. June 30, 2011), *report and recommendation adopted*, 2011 WL 13416556 (D. Ariz. Aug. 10, 2011) ("Plaintiff was an 'employee' of Defendants and his salary and deferred compensation constitutes "wages[.]"); *Fire Sec. Elecs. & Commc'ns Inc. v. Nye*, No. CV-23-02730-PHX-DLR, 2024 WL 3345375, at *2 (D. Ariz. July 9, 2024) (denying dismissal of AWFA claim for deferred compensation). Mishkin's claim is therefore not foreclosed as a matter of law.

Nonetheless, the complaint does not make clear which commissions are the basis for the AFWA claim. Mishkin seems to be arguing the commissions are those based on "her performance in Q3, and in prior quarters." (Doc. 11 at 4.) But it is undisputed that Mishkin resigned before the end of Q3, meaning she was not employed on the date payment of those commissions would have occurred. And the complaint does not identify when the commissions from "prior quarters" should have been paid. Without alleging those facts, Mishkin could not have had a reasonable expectation that she would receive those commissions because the terms of the compensation plan required that she remain employed by the commission payment date. *Wedel v. Olympian Worldwide Moving &*

*Storage, Inc.*, No. 1 CA-CV 23-0482, 2024 WL 1406140, at *3 (Ariz. Ct. App. Apr. 2, 2024) (concluding employee had no reasonable expectation of payment when he was not employed when commissions became payable).

Mishkin argues the requirement that she be employed on the payment date does not apply because the deferred commission payments were governed by the terms of the plans they were earned under. (Doc. 26 at 5.) But she does not allege those compensation plans differed in the requirement that she remain employed or even what the terms of any of those plans were. The AFWA claim is dismissed with leave to amend.

## V. Arizona Employment Protection Act

Mishkin also argues she was constructively discharged in violation of AEPA after she demanded payment of her commissions. (Doc. 11 at 7.) Because she resigned, Mishkin alleges her constructive discharge constituted a wrongful termination. *See Peterson v. City of Surprise*, 418 P.3d 1020, 1023 (Ariz. Ct. App. 2018) ("[C]onstructive discharge may transform a resignation into a discharge."). AEPA provides for wrongful termination claims where "(1) a discharge is in violation of an employment contract; (2) a discharge violates an Arizona statute; or (3) a discharge is in retaliation for the employee's assertion of certain rights protected by state law."[1] *Guernsey v. Elko Wire Rope Inc.*, No. CV-21-00848-PHX-DJH, 2023 WL 5348567, at *2 (D. Ariz. Aug. 21, 2023); A.R.S. § 23-1501.

A claim for constructive discharge requires allegations of (1) "objectively difficult or unpleasant working conditions" or (2) an employer's "outrageous conduct," such as "threats of violence" that "would cause a reasonable employee to feel compelled to resign" under the AEPA. A.R.S. § 23-1502(A). Mishkin's current complaint only alleges PRA "fail[ed] to pay her earned wages despite her repeated requests for such payment." (Doc. 11 at 7.) But the "fact that an employee is faced with an inherently unpleasant situation or that his or her choice is limited to two unpleasant alternatives" does not make the decision to resign involuntary. *Pearlmutter v. Cnty. of Coconino*, No. CV-19-08344-PCT-DJH, 2022

---

[1] PRA argues Mishkin cannot bring a claim under AEPA because AFWA provides an exclusive remedy. (Doc. 13 at 14.) But unlike the subsection PRA cites, Mishkin brings her claim under a different subsection of AEPA and is not limited to remedies under AFWA. *Cf.* A.R.S. § 23-1501(A)(3)(c)(ii) *with* A.R.S. § 23-1501(A)(3)(b).

WL 2176501, at *5 (D. Ariz. June 16, 2022). Her proposed amended complaint adds the naked allegation that PRA's failure to pay her wages "create[ed] intolerable working conditions and financial stress[.]" (Doc. 30-1 at 9.) This threadbare recitation of an element necessary for constructive discharge does not survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678.

Mishkin points to two out-of-circuit cases to support her argument that a "reduction in salary or wages" creates "intolerable working conditions." (Doc. 26 at 11.) But one case, *Brown v. Kinney Shoe Corporation*, actually determined that a reduction in salary did not meet the threshold for constructive termination. 237 F.3d 556, 566 (5th Cir. 2001). The other, *Logan v. Denny's, Inc.*, found that "disparate treatment, slanderous statements made to her by coworkers and managers," and a demotion "from server to busboy"—not a salary reduction alone—constituted constructive discharge. 259 F.3d 558, 569 (6th Cir. 2001).

Mishkin has already amended her complaint and her proposed second amended complaint unsuccessfully attempted to correct her pleading deficiencies. Because Mishkin's allegations again do not rise to the level of "objectively difficult or unpleasant working conditions" or "outrageous conduct," her wrongful termination claim is dismissed without leave to amend.

**VI.    Breach of Good Faith and Fair Dealing**

Although she has voluntarily dismissed her breach-of-contract claim (Doc. 26 at 2, 8; Doc. 30-1 at 7), Mishkin argues PRA breached the covenant of good faith and fair dealing implied in the May 2023 compensation plan because PRA "unilaterally reduced her compensation" by changing her sales goals after she had already made substantial progress in reaching them. (Doc. 11 at 7–8.) Mishkin explains this "claim is pled in the alternative" to her "claim for failure to pay wages." (Doc. 26 at 13.)

PRA argues the claim for breach of the covenant of good faith and fair dealing must be dismissed because the underlying contract, *i.e.*, the compensation plan, could be cancelled unilaterally. (Doc. 13 at 8.) According to PRA, any agreement that may be unilaterally canceled is void. (Doc. 13 at 8 (citing *Shattuck v. Precision-Toyota Inc.*,

588 P.2d 1332, 1334 (1977)).) But PRA fails to acknowledge that "interpretations that render contracts void . . . are highly disfavored." *Thomas v. Shields*, No. CV-22-00257-TUC-JCH, 2022 WL 16745335, at *3 (D. Ariz. Nov. 7, 2022). Instead, Arizona courts "interpret a contract whenever reasonable and possible in such a way as to uphold the contract." *Circle K Procurement & Brands Ltd. v. Goli Nutrition Inc.*, No. CV-23-01417-PHX-DJH, 2024 WL 1639143 (D. Ariz. Apr. 16, 2024) (quoting *Shattuck*, 588 P.2d at 1334 (1977)). And courts have found that an employer operating under a commission plan that grants it the unilateral power to cancel cannot use that discretion in an "arbitrary, unreasonable or oppressive" manner. *Marciniak v. Veritas Techs. LLC*, No. CV-20-01979-PHX-SMB, 2021 WL 1627250, at *4 (D. Ariz. Apr. 27, 2021); *see also Staren v. Clarivate Analytics (US), LLC*, No. CV-23-02091-PHX-DWL, 2025 WL 40767, at *7 (D. Ariz. Jan. 7, 2025) ("[E]ven textually unbounded grants of discretion [must] be exercised in a good-faith, non-arbitrary, and non-oppressive manner.").

But even so, Mishkin has not meaningfully responded to PRA's argument; instead, she merely argues she is entitled to plead in the alternative. (Doc. 26 at 13.) She has nowhere explained what factual allegations support a breach of the obligation of good faith and fair dealing in the parties' employment relationship nor why PRA's treatment of the contract was not in good faith or arbitrary. (Doc. 11 at 7–8.) Accordingly, this claim is dismissed with leave to amend.

**VII.   Unjust Enrichment**

Finally, Mishkin claims PRA was unjustly enriched by failing to pay her deferred and Q3 commissions. She explains this claim is also pleaded in the alternative in the event the "claims for failure to pay wages . . . and breach of the implied covenant of good faith and fair dealing . . . are dismissed." (Doc. 26 at 14.) Unjust enrichment requires plaintiff show (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) a lack of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law. *Ideasolv LLC v. Geante Rouge SARL*, No. CV-21-01905-PHX-MTL, 2022 WL 3042858, at *4 (D. Ariz. Aug. 2, 2022). PRA

argues Mishkin does not plead an enrichment that was unjust because it was entitled to modify the terms of the compensation plan at its discretion. (Doc. 13 at 16.)

The two cases PRA cites in support of its argument are inapposite. In both instances, the court analyzed whether a party could state an unjust enrichment claim when a contract governed the conduct of the parties. *See Seaboard Sur. Co. v. Grupo Mexico, S.A.B. de C.V.*, No. 06-CV-0134-PHX-SMM, 2009 WL 4827029, at *12 (D. Ariz. Dec. 15, 2009) ("[I]f there is 'a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application.") (quoting *Trustmark Ins. Co. v. Bank One, Ariz., N.A.*, 48 P.3d 485, 491 (Ariz. Ct. App. 2002)). But here, PRA has argued the compensation plan was not a contract for purposes of moving to dismiss Mishkin's other allegations.

PRA's attempt to treat the compensation plan as a contract when it suits PRA's interests fails. (*See* Doc. 13 at 16.) Arizona law permits a plaintiff to pursue an unjust enrichment claim as an alternative theory of recovery to a breach-of-contract claim, subject to a single recovery. *Lopez v. Musinorte Ent. Corp.*, 434 F. App'x 696, 699 (9th Cir. 2011). Here, Mishkin has abandoned her breach-of-contract claim so only one recovery is possible. And "an 'absence of justification' is all that is required to satisfy the 'unjust' component of unjust enrichment under Arizona law"). *Perez v. First Am. Title Ins. Co.*, 810 F. Supp. 2d 986, 993 (D. Ariz. 2011).

Mishkin alleges PRA received the benefit of sales that would have obligated PRA to pay her hundreds of thousands of dollars in commissions and unjustifiably changed the terms of her compensation plan in a way that prevented her from receiving those commissions after she had earned them. Therefore, PRA's motion to dismiss Mishkin's unjust enrichment claim is denied.

Accordingly,

**IT IS ORDERED** the Motion to Dismiss (Doc. 13) is **GRANTED IN PART AND DENIED IN PART**. The Equal Pay Act claim, breach of contract claim, and AEPA claim are **DISMISSED WITHOUT LEAVE TO AMEND**. The AFWA claim and breach of good faith and fair dealing claim are **DISMISSED WITH LEAVE TO AMEND**.

**IT IS FURTHER ORDERED** the Motion for Leave to Amend (Doc. 30) is **DENIED**.

**IT IS FURTHER ORDERED** if plaintiff wishes to file an amended complaint, she must do so no later than **February 14, 2025**. If an amended complaint is filed, defendant shall respond to that complaint by the deadline established by the Federal Rules. If plaintiff does not wish to file an amended complaint, no later than **February 5, 2025**, she shall file a statement to that effect. If plaintiff files a statement that she does not wish to file an amended complaint, defendant shall file its answer to the remaining claim no later than **February 14, 2025**.

Dated this 30th day of January, 2025.

*[signature]*
**Honorable Krissa M. Lanham**
**United States District Judge**